**RECEIVED**
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE _10, 4, 06_
BY _QDB_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DARELL DWAYNE WHITE,<br>   Petitioner | CIVIL ACTION<br>SECTION "P"<br>NO. CV05-0432-A |
| VERSUS | |
| BURL CAIN, WARDEN,<br>   Respondent | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Darell Dwayne White ("White") on March 9, 2005. White is contesting his 2001 convictions, in the Louisiana 9th Judicial District Court in Rapides Parish, on two counts of aggravated rape, one count of attempted aggravated rape, nine counts of oral sexual battery, seven counts of armed robbery, two counts of attempted armed robbery, three counts of second degree kidnapping, two counts of aggravated kidnapping, two counts of sexual battery, and one count of aggravated battery. White was sentenced to a total of three consecutive life sentences plus 25 years.

White raises the following issues for habeas review:

1. Whether White was denied effective assistance of counsel through his trial counsel's (1) failure to present a defense and witnesses who would have supported White's defense in counts 1 through 26, (2) failure to move for a mistrial or request that a mistrial be declared in counts 7 through 14, when Renee Sayer and Jennifer Gates made impermissibly suggestive identifications, (3) failure to request the court to instruct the jury to the charge of crime against nature in counts 2, 3, 4, 6, 7, 8, 9, 10 and 17, (4) failure to request the court to issue special instructions to the jury on the charge of carjacking in counts 27 and 28, (5) failure to object when the court erroneously instructed the jury in counts 2, 3, 4, 6, 7, 8, 9, 10, 17, 22 and 23 as to sexual battery and oral sexual battery, and (6) various evidentiary errors.

2. Whether the evidence was insufficient to convict White on two counts of attempted armed robbery (counts 27 and 28) because the State failed to prove White took anything or value from the person or immediate control of Mohammed Ahfaz, April Cole, or Cory Gills.

The Respondent admits and the record reflects that White exhausted his state court remedies. White's habeas petition is now before the court for disposition.

### Facts

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal, at State v. White, 2002-0282 (La. App. 3d Cir. 10/2/02), 829 So.2d 669, writ den., 2004-0983 (La. 2/25/05), 894 So.2d 1139, are as follows:

"Over the course of approximately one year, in six separate incidents, Defendant approached individuals in the area near the Alexandria levee and Fort Buhlow area, and committed a total of twenty-nine offenses, including various sexual offenses, second degree kidnapping, aggravated batter, and armed robbery. The Alexandria Police Department, after setting up surveillance, apprehended Defendant outside Rapides General Hospital. A search of the vehicle Defendant was driving at the

time, as well as a subsequent search of Defendant's apartment and vehicle, revealed items taken during the armed robberies. Defendant thereafter gave a taped confession to authorities in which he admitted to committing some of the offenses."

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable*

3

*application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also

4

unreasonable. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

<u>Law and Analysis</u>

<u>Ineffective Assistance of Counsel Claims</u>

White contends he was denied effective assistance of counsel through his trial counsel's (1) failure to present a defense and witnesses who would have supported White's defense in counts 1 through 26, (2) failure to move for a mistrial or request that a mistrial be declared in counts 7 through 14, when Renee Sayer and Jennifer Gates made impermissibly suggestive identifications, (3) failure to request the court to instruct the jury on the charge of crime against nature in counts 2, 3, 4, 6, 7, 8, 9, 10 and 17, (4) failure to request the court to issue special instructions to the jury on the charge of carjacking in counts 27 and 28, (5) failure to object when the court erroneously instructed the jury in counts 2, 3, 4, 6, 7, 8, 9, 10, 17, 22 and 23 as to sexual battery and oral sexual battery, and (6) various evidentiary errors.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence

5

supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence. Jones v. Cain, 227 F.3d 228 (5th Cir. Oct. 2000), and cases cited therein.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. Dowthitt v. Johnson, 230 F.3d 733 (5th Cir. 2000), cert. den., 532 U.S. 915, 121 S.Ct. 1250 (2001), citing Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), 466 U.S. at 689. Thus, the court's scrutiny of counsel's performance is highly deferential. The court must be particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing. Dowthitt, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir.1999).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. U.S. v. Chavez,

6

193 F.3d 375, 378 (5th Cir. 1999), citing <u>Clark v. Collins</u>, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966, 115 S.Ct. 432 (1994).

1.

White argues his trial counsel failed to present a defense and witnesses who would have supported White's defense in counts 1 through 26. White contends his statement to the police was not given freely and voluntarily, and that he gave his attorney the names and addresses of witnesses who could have corroborated his alibi defense that he was elsewhere when the crimes occurred. White contends (1) Ricky and Christina Vanasselberg would have testified that White attended a BBQ at their home from 8 p.m. until about 11:30 or 12:00 p.m. on April 23, 2000, (2) Chet Carey, Assistant General manger for the Aces baseball team could have testified White was in Winnfield, Louisiana on April 29, 2000, playing in an exhibition game until after 10:00 p.m., (3) Dwana William, Erica Laurent, Betty Jones, and Bridgett Craft could have testified that White was with them from 6:00 p.m. until 10:55 p.m. on February 7, 2001, (4) White used crutches prescribed by Dr. Jose Garcia-Ramirez and Dr. Fred Reid from March 18 through March 23, 2001, and (5) White's fiancee, Pamela Rideaux, would have testified that the bandanas found in their apartment belonged to her, that White was unable to run due to his medical condition, that she placed the knife under the car seat for her own protection, and

7

that White had a hammer to repair a part on his car.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993), citing Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 1052, 2066, 80 L.Ed.2d 674 (1984). However, bare allegations do not suffice. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. Nelson, 989 F.2d at 850, citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. den., 124 S.Ct. 2160 (U.S. 2004), citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Also, Boyd v. Estelle, 662 F.2d 388, 390 (5th Cir. 1981). Where the only evidence of a missing witnesses' testimony is from the defendant, the Court views claims of ineffective assistance with great caution. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001), citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987). Unless a petitioner provides the court with affidavits (or

similar matter) from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice. <u>Sayre</u>, 238 F.3d at 636.

As to the defense attorney's duty to investigate, the Fifth Circuit stated in <u>Soffar</u>, 368 F.3d at 474-475, "[A]n actual failure to investigate cannot be excused by a hypothetical decision not to use its unknown results. This Court has squarely rejected the State's rationale here--that a failure to interview a witness is excusable as a 'strategic decision' if the witness would not have been credible--holding that while a lack of credibility might support a strategic decision not to call a witness to testify at trial, we explained that a witness's character flaws cannot support a failure to investigate. Without so much as contacting a witness, much less speaking with him, counsel is 'ill-equipped to assess his credibility or persuasiveness as a witness.' ... Strickland simply does not 'require ... defer[ence] to decisions that are uninformed by an adequate investigation into the controlling facts and law.'"

White contends his counsel should have called certain alibi witnesses: Ricky and Christina Vanesslburg to testify that White was at a BBQ at their home on April 23, 2000 (Counts 1-6), Chet Carey to testify White was in Winnfield, Louisiana on April 29, 2000 (Counts 7-14), and Dwana William, Erica Laurent, Betty Jones, and Bridgett Craft to testify that White was with them on February 7, 2001 (Counts 15-20). White also claims his counsel should have

9

called Dr. Jose Garcia-Ramirez and Dr. Fred Reid to testify White was on crutches from March 18 through March 23, 2001 (Counts 18-27), and Pamela Rideaux to testify that the bandanas found in their apartment belonged to her, that White was unable to run due to his medical condition, that she placed a knife under the car seat for her own protection, and that White had a hammer to repair a part on his car.

White has not provided any affidavits to show actual prejudice, although he has submitted other documentary evidence in support of his claims, including his own written statement as to a phone conversation he had with Chet Carey (Doc. Item 1, Ex. A), the Aces Assistant General Manager (Doc. Item 1, Ex. B), hospital records of his emergency room visit following a fall down stairs on March 17, 2001, which indicate injuries to White's left ankle and lower back and the doctor's prescription of and order to use crutches to walk (Doc. Item 1, Ex. C), the May 14, 2000, investigative report by Sgt. Thompson showing Jennifer Gates stated Officer Jerry Harris was the man who raped her and her friend on April 29, 2000 (Doc. Item 1, Ex. E), a newspaper article concerning Harris' termination from the police department for harassing Jennifer Gates (Doc. Item 1, Ex. F), a copy of the weather report on February 7, 2001 (Doc. Item 1, Ex. G), and crime lab reports (Doc. Item 1, Ex. H).

It is noted that no defense witnesses, other than White

himself, were called in this case. The State did not hold an evidentiary hearing or make any findings of fact as to White's claims of ineffective assistance of counsel. However, in the case at bar, White made two inculpatory statements to the police in which he admitted the offenses with which he was charged. Although he claims he did so out of fear of the officers taking the statements, White has not submitted any proof of that he was coerced. Thus, although the record does not reflect whether White's counsel interviewed White's alleged alibi witnesses or not, a decision to not call them could be deemed reasonable given the fact that they would simply be refuting White's own confessions. It is also noted that White's trial counsel attempted unsuccessfully to suppress the inculpatory statements.

Therefore, given the circumstances of this case, White has not shown that he had ineffective assistance of counsel because his counsel did not call witness to refute White's confessions. This ground for relief is meritless.

2.

Next, White contends his counsel erred in failing to move for a mistrial or request that a mistrial be declared in counts 7 through 14, when Renee Sayer and Jennifer Gates made impermissibly suggestive identifications.[1]

---

[1] In his first inculpatory statement to the police, White claimed he did not commit the offenses of April 2000 involving Renee Sayer and Jennifer Gates (See White's inculpatory

A conviction based on an eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Coleman v. Quarterman, __F.3d__, 2006 WL 1991686 (5th Cir. July 18, 2006), citing Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990), and Simmons v. United States, 390 U.S. 377 (1968). A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. Such an analysis is a mixed question of law and fact. Coleman, 2006 WL 1991686, citing Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997), and

---

statements, Doc. Item 17, p. 3), although he admitted at least some involvement in the other offenses (Doc. Item 17, pp. 5-26). In his second inculpatory statement to the police White admitted committing the offenses of April 2000 involving Renee Sayer and Jennifer Gates (Doc. Item 17, pp. 36-37).

In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Hannon, 37,351 (La.App. 2 Cir. 8/20/03), 852 So.2d 1141, 1145-1146, and cases cited therein.

Sumner v. Mata, 455 U.S. 591, 597 (1982)("[T]he ultimate question as to the constitutionality of the pretrial identification procedures ... is a mixed question of law and fact....").

The Supreme Court has identified several factors to help determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Coleman, 2006 WL 1991686, citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972), and Livingston, 107 F.3d at 310-11. Also, Amador v. Quarterman, __F.3d__, 2006 WL 2129699, *13 (5th Cir. 2006).

Therefore, the first step is to determine whether the pretrial identification was impermissibly suggestive.[2] In the case at bar, Renee Sayer did not testify that White was the man who attacked them, but testified she had thought Officer Harris was their attacker because Officer Harris and the attacker were the same height, both were dark skinned black males, they had very similar, educated voices, and the attacker said something to them as if he

_____

[2] It is noted that White raised this claim in his application for post-conviction relief. The state courts denied White's ineffective assistance of counsel claims summarily, the Court of Appeal stating only that "Relator failed to show how defense counsel was ineffective in his performances, or how he was prejudiced by defense counsel's deficiencies" (Tr. pp. 373, 392).

13

already knew who they were and where they had been that day (Tr. pp. 616-617, 666). Sayer testified that Officer Harris had stopped Sayer and Gates two days prior, so she thought she recognized his voice when they were attacked (Tr. p. 6170. Sayer testified that, when she finally talked to the police about the attack a few weeks later, they told her they were sure White was the man who had attacked her and asked her to try to identify pictures of sunglasses, a bandanna and a knife (Tr. pp. 618-619, 658-660); Sayer was sure the knife in the photo was the same knife that had been used by the man who attacked them (Tr. p. 659). However, Sayer testified that, after the attack, she saw a yellow or gold Cadillac traveling on the road near where they were attacked, and was later been told that Officer Harris owned a Cadillac that color (Tr. p. 664). Sayer also testified she was "shocked" to learn that White, rather than Officer Harris, was the man who had attacked them (Tr. p. 668).

Jennifer Gates identified White in court. Gates testified that the man who attacked she and Sayer was wearing a bandana, "Oakley" type sunglasses, some form of a cap, surgical gloves, dark clothes and dark lace-up shoes, his voice was deep, soft, and educated, he did not use much street slang, and he ran like he was in good shape (Tr. pp. 678, 679, 681, 686, 691). Gates testified that she did not immediately report the attack to the police because she believed she knew who her attacker was; she believed

14

the attacker was a police officer, Officer Jerry Harris, and thought she had felt a bullet proof vest (Tr. pp. 629, 688). Gates testified that the attacker told them he had been following them (Tr. p. 624). Gates also testified she saw a yellow or gold, older model Cadillac with a hood ornament following them that day and she saw it again after they let the levee after they were attacked (Tr. pp. 640, 643). Gates testified that Officer Jared King stopped her vehicle on May 14 or 15, 2000, after she and Renee were attacked, and she reported that they had been raped by a police officer (Tr. p. 626); Officer King sent her to report it to Internal Affairs (Tr. pp. 627-629). Gates testified that she reported she had been attacked on the levee by Officer Jerry Harris; Gates testified that she recognized her attacker's voice as Officer Harris', from when Officer Harris previously pulled her over and harassed her when she worked at Outlaw's (Tr. pp. 630, 636-637). After the attack, when Gates and Sayer left the levee in their car, Gates testified they chased a blue Cutlass with two black males in it and Sayer wrote down part of the license number (Tr. pp. 641-643); Gates did not recall making a statement to the police that one of the men in the car looked like Officer Harris (Tr. p. 641).

Gates also testified that the detectives she spoke to told her that White's voice is similar to Officer Harris's, she noted that her attacker had a distinctive voice (Tr. pp. 632, 635). Gates testified the police called and told her they had arrested her

attacker, who was White (Tr. p. 639); when Gates went to the station, the police showed her pictures of White, then showed her pictures of both White and Officer Harris (Tr. p. 638). Gates testified there was a striking resemblance between Officer Harris and White in the photographs (Tr. p. 637). When asked at trial, Gates testified she did not know whether her in-court identification of White was based on what the police told her or what she knew (637-638).

First, it is noted that this case does not involve an actual photographic lineup. The police identified White as the man who attacked Gates and Sayer attacker, then, several weeks after the attack, showed them pictures to point our the similarities in White's and Harris' appearances. Both Sayer and Gates originally identified Officer Harris as their attacker. At trial, Sayer was still surprised it was White and not Harris who had attacked them, and Gates could not state why she had decided White was her attacker instead of Harris.

It was very clear from Sayer's and Gates' testimony that the police told them it was White who had attacked them rather than Harris; neither Sayer nor Gates picked White out of a lineup. Given the fact that both Gates and Sayer were initially certain Harris was their attacker, Gates was so confused that she was not sure at trial why she was identifying White as her attacker other than because the police had told her he was, and Sayer testified

she was still surprised it was not Harris, their "identification" of White is highly suspect. It is clear that the identification procedures used for Sayer and Gates to identify White were impermissibly suggestive. Contrast, U.S. v. Shaw, 894 F.2d 689, 693 (5th Cir.), 498 U.S. 828, 111 S.Ct. 85 (1990) (victim watched defendant attentively in the parking lot and saw a portion of his face during the robbery, her description to the police was accurate, she was absolutely certain the defendant was the perpetrator after seeing him in person, she was ninety-five percent certain just from seeing his photograph in the array, she viewed the photographs only one hour after the robbery, and the one-on-one show-up occurred just a few hours later; under the "totality of the circumstances" test, the reliability of the identification procedure was not so compromised as to require exclusion from trial).

Therefore, the court must next consider whether, under the totality of the circumstances, the suggestiveness of the identification procedure led to a substantial likelihood of irreparable misidentification. The circumstances of this case include White's confession that he committed the offenses. That confession, together with the red bandana found in the apartment White shared with his girlfriend which matched the one worn by the attacker at the time of the offense, and the knife found in White's vehicle which matched the one used during the offense, show that,

under the totality of the circumstances, the suggestiveness of the identification procedure did not lead to a substantial likelihood of irreparable misidentification. Therefore, this ground for relief is meritless.

## 2. Responsive Verdict

Next, White contends his counsel was ineffective in failing to request the court to instruct the jury to the charge of crime against nature in counts 2, 3, 4, 6, 7, 8, 9, 10 and 17.

The fact that a jury instruction was incorrect under state law is not a basis for federal habeas relief. A federal court may reverse a state criminal conviction based upon erroneous jury instructions only when the instruction in question rendered the entire trial fundamentally unfair. Gissendanner v. Wainwright, 482 F.2d 1293, 1300 (5th Cir. 1973). Also, Montoya v. Scott, 65 F.3d 405, 409 (5th Cir. 1995), cert. den., 517 U.S. 1133, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996).

La.C.Cr.P. art. 803 provides, in pertinent part: "When a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under the provisions of Article 814 or 815, the court shall charge the jury as to the law applicable to each offense." State v. Dorsey, 30,683 (La.App. 2d Cir. 6/24/98), 718 So.2d 466, 469, writ den., 1998-2227 (La. 12/18/98), 732 So.2d 54. Moreover, La.C.Cr.P. art. 807 provides, in pertinent part: "A requested special charge shall be given by

18

the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given." La.C.Cr.P. art. 802 obligates the trial court to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. Dorsey, 718 So.2d at470, and cases cited therein.

White was charged with committing oral sexual battery in April 2000 (the time of those offenses), pursuant to La.R.S. 14:43.3. Pursuant to La.C.Cr.P. arts. 814 and 815, the offense of crime against nature, La.R.S. 14:89, is not, and was not then, a responsive verdict to or a lesser included offense of oral sexual battery. Moreover, an instruction as to crime against nature would not have been pertinent to White's defense that he was not the perpetrator. The fact that a defendant's conduct falls within the purview of two criminal statutes is not unusual, and a statutory scheme which gives the prosecutor the option to choose between two properly defined offenses does not violate any constitutional rights of an accused. State v. Walters, 440 So.2d 115, 122 (La. 1983).

Therefore, White's attorney was not deficient in failing to request a jury charge on crime against nature. This ground for relief is meritless.

### 3. Jury Instruction on Carjacking

White also contends his attorney was ineffective in failing to ask the court for a special instruction on carjacking as a responsive verdict to attempted armed robbery. Specifically, White contends that, since the evidence did not show he took anything of value from Mohammed Ahfaz and April Cole, other than their car keys, carjacking would have been a proper responsive verdict.

A jury may return a legislatively-provided responsive verdict, whether or not the evidence supports the verdict, as long as the evidence is sufficient to support conviction for the charged offense. State v. Froiland, 05-138 (La. 7/26/05), 910 So.2d 956, 970-971, and cases cited therein. It is not unusual that an accused's conduct falls within the definition of more than one criminal statute with significant differences in penalties. The district attorney has the sole discretion to choose under which law he will prosecute. State v. Craig, 606, 32,209 (La.App. 2 Cir. 8/18/99), 747 So.2d 604, 606. Also, U. S. v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198 (U.S. 1979).

The district attorney chose to charge White with attempted armed robbery, which the district judge properly instructed the jury on. Carjacking is not a legislatively provided responsive verdict for attempted armed robbery. Although the evidence adduced at trial may have supported a charge of carjacking, the decision of whether to charge White with attempted armed robbery of carjacking

was within the discretion of the district attorney. See State v. Boss, 03-133 (La. App. 5th Cir. 5/28/03), 848 So.2d 75, 77, writ den., 2003-1968 (La. 5/14/04), 872 So.2d 508 ("The district attorney has the sole discretion to choose under which law he will prosecute"), and cases cited therein. Moreover, an instruction on carjacking would not have been pertinent to White's defense that he was not the perpetrator of those offenses.

Since White was charged with attempted armed robbery, for which carjacking is not a responsive verdict, White's counsel was not ineffective for failing to request that jury instruction. This ground for relief is also meritless.

### 5. Objections to Jury Charges

White contends he had ineffective assistance of counsel when his attorney failed to object to erroneous jury instructions in counts 2, 3, 4, 6, 7, 8, 9, 10, 17, 22 and 23 as to sexual battery and oral sexual battery. White argues the trial judge should not have included the phrase "the victim was compelled by being placed in fear of receiving bodily harm," because it elevated the offenses of sexual battery and oral sexual battery to aggravated sexual battery.[3] White points out that aggravated sexual battery includes the intentional infliction of serious bodily injury on the victim,

---

[3] That phrase is not currently part of the statutes proscribing sexual battery, La.R.S. 14:43.1, or oral sexual battery, La.R.S. 14:43.3, but was at the time of the charged offenses. Aggravated sexual battery, La.R.S. 14:43.2, has since been renamed second degree sexual battery.

La.R.S. 14:43.2, and attempts to equate that with placing the victim "in fear of receiving bodily harm," as provided in sexual battery and oral sexual battery.

Since placing the victim in *fear of receiving* bodily harm is not the same as *actually inflicting* serious bodily harm on the victim, White's argument is untenable. The trial judge correctly read the statutes for sexual battery and oral sexual battery as they were written at the time of the offenses, which included the phrase "the victim was compelled by being placed in fear of receiving bodily harm." Therefore, White's attorney's performance was not deficient in this respect, and this ground for relief is also meritless.

### 6. Evidentiary Errors

White contends he also had ineffective assistance of counsel due to "various evidentiary errors," such as (1) the fact that White told his attorney he could not have been Ahfaz's attacker because he always has a goatee, which White's girlfriend and other potential witnesses could have attested to, while Ahfaz' attacker was clean shaven, (2) Basco's attacker had long, yellowish fingernails, while White's had never been long, which could have been corroborated by several potential witnesses, (3) White's attorney failed to present evidence to show the condom wrapper presented at trial was planted by officers, and (4) White's attorney failed to introduce evidence that another individual was

assaulted by the police, in order to show why White "cooperated" and gave false statements during his interrogation by the police.

Since White has not adduced evidence to support his claims that his attorney failed to call unnamed witnesses or failed to present unspecified evidence, they are not considered credible on habeas review. This ground for relief is meritless.

## Ground No. 2 - Evidence of Attempted Armed Robbery

White contends the evidence was insufficient to convict him on two counts of attempted armed robbery[4] (counts 27 and 28) because the State failed to prove White took anything or value from the person or immediate control of Mohammed Ahfaz, April Cole, or Cory Gills.

White attempted to take the car keys from Ahfaz, and from Cole and Gills, apparently with the intent of taking their cars. Ahfaz, Cole, and Gills all testified that White demanded they give him their car keys (Tr. pp. 727, 860, 1224). White contends he did not actually take "anything of value" from the victims.

For attempt, the prosecutor's burden was to prove specific

---

[4] Armed robbery is defined in La.R.S. 14:64 as:
  A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
  B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.

intent, which can be inferred from circumstances, and the commission of an overt act tending toward accomplishing the offense. See State v. Hunter, 454 So.2d 131, 134-135 (La. App. 2d Cir. 1984), writ den., 456 So.2d 1018 (La. 1984). It was not necessary that the prosecution prove an actual taking. White's attempted armed robbery conviction is supported by evidence of his use of a dangerous weapon (the knife) and his demands that the victims give him their car keys, from which it could be inferred that he intended to take their cars. Viewing the evidence here in a light most favorable to the prosecution, it was sufficient to sustain White's convictions for attempted armed robbery.

Therefore, this ground for relief is meritless.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that White's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of October, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE